B. McKay Mignault, Chief Bankruptcy Judge
United States Bankruptcy Court

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| IN RE:<br><br>DANIELLE LEIGH WILLIAMSON and<br>JASON AARON WILLIAMSON,<br><br>Debtors. | CASE NO. 2:24-bk-20256<br><br>CHAPTER 13<br><br>JUDGE B. MCKAY MIGNAULT |

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTIONS FOR RECONSIDERATION**

---

On August 14, 2026, the Debtors, proceeding *pro se*, filed three separate motions, each seeking relief under Federal Rule of Civil Procedure 60(b). *See* dkts. 203, 204, & 205 (collectively, the "Motions"). The Motions request relief from the *Agreed Order* [dkt. 171] (the "Agreed Order") entered March 2, 2026, between the Debtors and Creditor Rebecca Lanham ("Ms. Lanham"), which resolved Ms. Lanham's objection to confirmation. The Court held an evidentiary hearing on the Motions on August 26, 2026 (the "Hearing"). Present at the Hearing were the Debtors, appearing *pro se*; counsel for the Chapter 13 Trustee, Virginia A. Lemon; counsel for Ms. Lanham, Clayton Harkins; and Megan Patrick (the Debtors' now-withdrawn attorney), along with her counsel, Jed Nolan. For the reasons set forth herein, the Court **DENIES** the Motions.

**I. Pertinent Factual and Procedural Background.**

Ms. Lanham holds a deed of trust secured by the Debtors' residence located at 1213 Ridge Drive, South Charleston, West Virginia (the "Property"). On February 9, 2026, the parties appeared before the Court for an evidentiary hearing on Ms. Lanham's objection to confirmation

of the Debtors' *Amended Chapter 13 Plan* [dkt. 117]. *See Objection to Amended Chapter 13 Plan* [dkt. 138]. The Debtors and Ms. Lanham appeared in person at that evidentiary hearing. Ms. Patrick appeared on behalf of the Debtors, and Mr. Harkins appeared on behalf of Ms. Lanham.

Prior to the start of the February 9th evidentiary hearing, and after receiving permission from the Court, the parties left the courtroom to discuss settlement. Later that morning, the parties returned to the courtroom, indicating that they had reached an agreement that resolved the issues requiring the evidentiary hearing. Mr. Harkins then stated the general terms of the agreement on the record, which Ms. Patrick confirmed, with a proposed agreed order to follow. The settlement ultimately culminated in the Court's entry of the Agreed Order on March 2, 2026.

The Agreed Order provided, in relevant part, that the Debtors would obtain preapproval for a loan to refinance the Property by May 31, 2026 (the "Final Preapproval Date"), in the amount of $159,834.84, plus any interest, fees, expenses, or charges incurred by Ms. Lanham. Agreed Order at 1. Importantly, the Agreed Order separately required the Debtors to pay Ms. Lanham in full prior to July 30, 2026 (the "Final Payoff Date"). *Id.* The Agreed Order expressly provided that it was "conditioned upon strict compliance with each and every term, deadline, and obligation." *Id.* at 3. "Any failure of strict compliance" would constitute a default under the Agreed Order and entitle Ms. Lanham to certain judgment remedies, including requiring the Debtors to surrender possession of the Property, deliver an executed deed in lieu of foreclosure to Ms. Lanham, and lifting the automatic stay. *Id.* at 2-3. The Agreed Order was signed by both Mr. Harkins and Ms. Patrick. *Id.* at 5.

On July 1, 2026, the Debtors filed a motion for post-petition financing, representing that Mr. Williamson had been prequalified for a $165,000.00 mortgage. *See Debtors' Motion to Incur Post-Petition Indebtedness to Purchase/Refinance Primary Residence* [dkt. 184]. Ms.

Lanham opposed the motion, arguing that Mr. Williamson had obtained only a prequalification, rather than the preapproval required by the Agreed Order, and that this failure constituted a default. *See Creditor Rebecca Anne Lanham's Response to Debtors' Motion to Incur Post-Petition Indebtedness to Purchase/Refinance Primary Residence* [dkt. 188]. The Court held a hearing on the matter on July 22, 2026, and granted the Debtors' motion to incur post-petition financing. At that hearing, the Debtors, through counsel, first raised the issue of Ms. Patrick's purported lack of authority to agree to the July 30th Final Payoff Date. After granting the motion for post-petition financing, the Court then set a status hearing for August 5, 2026, to receive an update as to whether the final payoff had been made. The Court instructed Ms. Lanham to defer foreclosure proceedings pending the August 5th hearing, notwithstanding the Debtors' failure to meet the July 30th deadline.

At the August 5th hearing, Ms. Patrick represented that the Debtors remained in the underwriting process and that the final payoff had not been made. The Court therefore found the Debtors in default of the Agreed Order and determined that Ms. Lanham was entitled to the judgment remedies provided therein. *See Order* [dkt. 207]. That same day, Ms. Patrick moved to withdraw as counsel for the Debtors, citing a conflict of interest. *See Motion to Withdraw as Counsel for the Debtors* [dkt. 196]. The Court granted the motion to withdraw on August 13, 2026, and the Debtors have since proceeded *pro se*. *See Order Granting Motion to Withdraw as Counsel for the Debtors* [dkt. 202].

**II. The August 26, 2026, Evidentiary Hearing.**

On August 14, 2026, more than five months after the Court's entry of the Agreed Order, the Debtors filed the Motions, seeking relief from the July 30th Final Payoff Date under Federal Rule of Civil Procedure (60)(b). In the Motions, the Debtors contend that Ms. Patrick

neither advised them of nor had the authority to agree to the Final Payoff Date. The Motions request that the Court halt a foreclosure sale of the Property scheduled for September 4, 2026.

The Court scheduled the Motions for an evidentiary hearing on August 26, 2026, and ordered the Debtors and Ms. Patrick to appear in person to "present evidence and argument as to whether Ms. Patrick possessed authority to enter into the Agreed Order [dkt. 171], including the July 30th [F]inal [P]ayoff [D]ate." *Order* [dkt. 209].[1] Prior to the Hearing, Ms. Patrick and the Debtors filed witness and exhibit lists. The Court will briefly recount the Debtors' testimony at the Hearing, as well as that of Ms. Patrick, before ruling on the issue of Ms. Patrick's authority to agree to the Final Payoff Date.[2]

**a. The Debtors' Testimony.**

Both Debtors testified at the Hearing, with Mr. Williamson testifying first. He stated that he did not agree to the July 30th Final Payoff Date and that Ms. Patrick did not discuss that specific date with him until March 10, 2026, after the Court's entry of the Agreed Order. He further testified that, had the July 30th deadline been discussed with him, he would not have agreed to it. During Mr. Williamson's testimony, the Debtors admitted into evidence, without objection, an email from July 30, 2026, in which they raised concerns regarding the July 30th Final Payoff

---

[1] The Fourth Circuit requires an evidentiary hearing when there is a material dispute as to counsel's authority to enter into a settlement agreement. *See, e.g.*, *Millner v. Norfolk & W. Ry. Co.*, 643 F.2d 1005, 1009 (4th Cir. 1981) (requiring a "plenary evidentiary hearing" when there is a material dispute concerning the authority of an attorney to enter into a settlement agreement). Other courts are in accord. *See, e.g.*, *Gomez v. City of New York*, 805 F.3d 419, 424 (2d Cir. 2015) (requiring an evidentiary hearing where an attorney and his client dispute the giving of authority); *Surety Ins. Co. of Cal. v. Williams*, 729 F.2d 581, 583 (8th Cir. 1984) (remanding for an evidentiary hearing where a party claimed that their attorney lacked authority to agree to a settlement).

[2] On the Court's docket is a recording of the Hearing, summarized herein. *See* dkts. 230, 231 & 232.

Date, and Ms. Patrick's response thereto on July 31, 2026. *See* dkt. 229, Ex. 11, at 33-34; *id.*, Ex. 12, at 33.

Mrs. Williamson's testimony was largely consistent with that of Mr. Williamson. Like Mr. Williamson, she testified that she did not agree to the July 30th Final Payoff Date. Instead, she stated that she only agreed to the May 31st Final Preapproval Date. She first became aware of the July 30th Final Payoff Date after receiving the Agreed Order in the mail, as the Final Payoff Date was not stated on the record on February 9th. She testified that Ms. Patrick later informed the Debtors that the Final Payoff Date was not a firm deadline. On cross-examination, Mrs. Williamson was unable to remember specific offers and counteroffers made during the parties' settlement negotiations on February 9th. She also testified that she had no recollection of discussing a closing period with Ms. Patrick on that date.

**b. Ms. Patrick's Testimony.**

Ms. Patrick, in contrast, clearly recalled the offers and counteroffers proposed on February 9th. She testified as follows.[3] Ms. Lanham's first offer provided for a final payoff date of May 31, 2026. The Debtors rejected this offer and requested that Ms. Patrick attempt to negotiate additional time for closing. Ms. Patrick then provided a counteroffer to Mr. Harkins, requesting an extension of the final payoff date to June or July of 2026.

---

[3] Ms. Patrick's testimony and exhibits reveal confidential information related to her representation of the Debtors. She has disclosed that information here pursuant to Rules 1.6(b)(5) and (6) of the *West Virginia Rules of Professional Conduct*. *See* W.Va. R. Prof'l Conduct 1.6(b)(5) (providing that a lawyer may reveal confidential information relating to the representation "to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client"); W.Va. R. Prof'l Conduct 1.6(b)(6) (providing that a lawyer may reveal confidential information relating to the representation "to comply with other law or a court order").

Ms. Lanham countered with a second offer: a May 31st *preapproval* deadline, with a final payoff date thirty to forty-five days later. Ms. Patrick conveyed this offer to the Debtors and evaluated it with them for at least thirty to forty minutes, including a discussion of a feasible timeframe for the Debtors to close on the loan following the preapproval. Believing they could close by June or July of 2026, the Debtors authorized Ms. Patrick to accept Ms. Lanham's second offer.

Following the February 9th hearing, Mr. Harkins provided Ms. Patrick with a draft document memorializing the parties' settlement. Ms. Patrick rejected the initial draft because it only provided for thirty days for the loan to close (until June 30, 2026). Ms. Patrick was able to successfully negotiate a later payoff date of July 30, 2026—sixty days after the Final Preapproval Date. According to Ms. Patrick, this lay within her authority because the Debtors authorized a settlement that provided for at least thirty to forty-five days for closing after the Final Preapproval Date. She did not confer with the Debtors before agreeing to the July 30th Final Payoff Date because it was a more favorable term than they authorized her to agree to on February 9th. Despite the Agreed Order being entered on March 2, 2026, the Debtors did not apply for a loan until more than two months later, on May 18, 2026.

At the conclusion of Ms. Patrick's testimony, her counsel moved for the admission of several exhibits without objection, including (1) incoming and outgoing email communications between the Debtors and Ms. Patrick during the course of her representation; (2) a telephone log of phone calls between Ms. Patrick and the Debtors in 2026; and (3) the initial draft of the Agreed Order provided to Ms. Patrick by Mr. Harkins. *See* Ex. B [dkts. 219, 220, 221, 222, 223]; Ex. C [dkts. 224, 225, 226, 227]; Ex. D [dkt. 215-2]; Ex. E [dkt. 215-3].

## III. Legal Standard.

A party may seek reconsideration under Rule 60(b) of the Federal Rules of Civil Procedure, made applicable pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure. For a Rule 60(b) motion to be successful, "a party [must] . . . demonstrate (1) timeliness, (2) a meritorious defense, (3) a lack of unfair prejudice to the opposing party, and (4) exceptional circumstances." *In re Vandevender*, No. 2:21-bk-20207, 2022 Bankr. LEXIS 673, at *5-6, 2022 WL 758806, at *2 (Bankr. S.D.W. Va. Mar. 11, 2022). After satisfying these gateway requirements, the movant "must satisfy one of the six enumerated grounds for relief under Rule 60(b)." *Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 266 (4th Cir. 1993). Here, the Motions do not specify the subsection upon which the Debtors rely. Based on the content of the Motions and the Debtors' arguments at the Hearing, it appears the Debtors are attempting to invoke subsections (1) and (6). These specific grounds permit relief when there has been "(1) mistake, inadvertence, surprise, or excusable neglect . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (6). The Debtors, as the moving party, bear the burden to establish the grounds set forth in the Motions, and such grounds "must be clearly substantiated by adequate proof." *In re Burnley*, 988 F.2d 1, 3 (4th Cir. 1992).

The crux of the Debtors' argument is that Ms. Patrick neither advised them of nor had authority to agree to the July 30th Final Payoff Date. As a general rule, parties are bound by the actions of their lawyers, and an alleged attorney mistake usually does not provide a basis to set aside a judgment pursuant to Rule 60(b)(1). *See, e.g.*, *McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 595 (6th Cir. 2002) ("[T]he case law consistently teaches that out-and-out lawyer blunders . . . do not qualify as 'mistake' or 'excusable neglect' within the meaning of Rule 60(b)(1)." (cleaned up)); *Kellogg v. Schreiber (In re Kellogg)*, 197 F.3d 1116,

1120 n.3 (11th Cir. 1999) ("[A]ttorney negligence or oversight rarely warrants relief from judgment."). However, the Debtors' assertion that their attorney lacked authority to agree to the settlement could state a ground for relief under Rule 60(b). *See, e.g.*, *Williams*, 729 F.2d at 582 (holding that the defendants' claim that their attorney lacked authority to agree to a settlement could state a ground for relief under Rule 60(b)).

## IV. Discussion.

Having summarized the testimony and evidence offered at the Hearing, the Court will evaluate whether the Debtors have met their burden of showing that Ms. Patrick acted without actual or apparent authority in agreeing to the July 30th Final Payoff Date. The Court finds that the Debtors have not met their burden of proof.

"It is generally accepted that when a client retains an attorney to represent him in litigation, absent an express agreement to the contrary, the attorney has *implied* authority to conduct the litigation and to negotiate its resolution." *Auvil v. Grafton Homes, Inc.*, 92 F.3d 226, 229-30 (4th Cir. 1996) (emphasis in original). "But the substantive decisions of whether to bring suit, to dismiss suit, or to settle are not by implication ones that the attorney is authorized to make." *Id.* at 230 (cleaned up). West Virginia law, the state wherein the parties' agreement was made, "is not to the contrary." *Chalifoux v. Wetzel Cnty. Hosp., Inc.*, No. 5:22-CV-313, 2024 U.S. Dist. LEXIS 75112, at *8, 2024 WL 1699350, at *3 (N.D. W. Va. Jan. 17, 2024).

"The attorney's authority to speak and act for his or her client is ultimately governed by agency principles." *Id.* "The attorney's authority to settle a case may be actual or apparent." *Wells Fargo Bank, N.A. v. Green*, No. 3:10-CV-67, 2011 U.S. Dist. LEXIS 23113, at *2, 2011 WL 862237, at *1 (W.D. Va. Mar. 7, 2011); *see also Auvil*, 92 F.3d at 230 (discussing both actual and apparent authority of an attorney to settle a case on behalf of their client). Express

actual authority exists "when the principal expressly grants the agent the authority to perform a particular act." *In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 223 F. Supp. 3d 514, 520 (N.D.W. Va. 2016). Express actual authority is "proven through words." *Id.* Apparent authority, on the other hand, "results from a principal's manifestation of an agent's authority to a third party, regardless of the actual understanding between the principal and agent." *Auvil*, 92 F.3d at 230.

The Supreme Court of Appeals of West Virginia addressed the concept of apparent authority in *General Electric Credit Corp. v. Fields*, 133 S.E.2d 780 (W.Va. 1963). *Fields* held that

> [o]ne who by his acts or conduct has permitted another to act apparently or ostensibly as his agent, to the injury of a third person who has dealt with the apparent or ostensible agent in good faith and in the exercise of reasonable prudence, is estopped to deny the agency relationship.

*Id.*, Syl. Pt. 1.

"When an attorney-client relationship exists, apparent authority of the attorney to represent his or her client is presumed." *Chalifoux*, 2024 U.S. Dist. LEXIS 75112, at *13, 2024 WL 1699350, at *4 (citing Syl Pt. 1, *Miranosky v. Parson*, 161 S.E.2d 665 (W.Va. 1968)); *see also* Syl. Pt. 3, *McKnight v. Pettigrew*, 91 S.E.2d 324 (W.Va. 1956) (holding that when a licensed attorney employed to represent a party appears and "consents to the entry of an order, and the order becomes final, the authority of the attorney to represent the litigant by whom he was employed . . . will be presumed until the contrary is clearly established in a proper proceeding"). The Supreme Court of Appeals of West Virginia addressed the significance of this presumption in the context of settlement agreements in *Sanson v. Brandywine Homes, Inc.*, 599 S.E.2d 730 (W.Va. 2004):

> While this Court has recognized that the mere relation of attorney and client does not clothe the attorney with implied authority to compromise a claim of the client . . . we have also held that when an attorney appears in court representing clients there is a strong presumption of his authority to represent such clients, and the burden is upon the party denying the authority to *clearly show* the want of authority.

*Id.* at 735 (cleaned up, emphasis added). Courts have noted that, "[i]n practice, the presumption that an attorney has authority to act for her client (in settlement negotiations and elsewhere) is so strong that it will seldom be rebutted." *Lewis v. Nationstar Mortgage LLC*, No. 4:19-cv-00164-D, 2021 WL 6275805, at *3 (E.D.N.C. Apr. 1, 2021); *see also Williams*, 729 F.2d at 583 (noting that the moving party bears a "heavy burden to establish that their attorney acted without any kind of authority in agreeing to the entry of judgment in the trial court").

**a. The Debtors have not met their burden of proving that Ms. Patrick lacked actual authority.**

Having now conducted an evidentiary hearing and given the Debtors an opportunity to present evidence, the Court concludes that they have not met their burden of proving that Ms. Patrick lacked actual authority to agree to the July 30th Final Payoff Date on their behalf. To start, the Court does not find the Debtors' testimony that Ms. Patrick lacked authority to be credible. Although the Debtors purported to recall that they did not authorize Ms. Patrick to agree to the July 30th Final Payoff Date, they could recall little else about the February 9th negotiations. In particular, Mrs. Williamson testified that she was unable to remember the specific offers and counteroffers exchanged on February 9th. The selective nature of her recollection, particularly when used to support the Debtors' present position, undermines her credibility.

Ms. Patrick, on the other hand, recalled the parties' February 9th offers and counteroffers with specificity. She testified that the Debtors rejected Ms. Lanham's first offer (a payoff date of May 31, 2026) because they did not believe it provided enough time to close on the

loan. She specifically recalled the Debtors asking her to request additional time for closing—until June or July 2026—and proposing the same to Mr. Harkins. The Court finds Ms. Patrick's testimony to be credible and persuasive. The Court also finds it unlikely that a settlement would have been reached on February 9th had a term as material as the final payoff date been omitted. Based on the testimony and evidence presented at the Hearing, the Court finds that the Debtors have failed to meet their burden of proving that Ms. Patrick lacked actual authority to negotiate the July 30th Final Payoff Date.

**b. The Debtors have not met their burden of proving that Ms. Patrick lacked apparent authority.**

Even assuming *arguendo* that Ms. Patrick lacked actual authority to agree to the July 30th Final Payoff Date, the Debtors have failed to rebut the presumption that she had apparent authority.

"[A]pparent authority is entirely distinct from—and sometimes conflicts with—both express and implied authority." *Akers v. Minn. Life Ins. Co.*, 35 F. Supp. 3d. 772, 784 (S.D.W. Va. 2014) (cleaned up). "When a principal, through his acts or omissions, causes a third party, in good faith and in the exercise of reasonable prudence, to rely on the agent's authority to act on the principal's behalf, the agent can bind the principal." *Auvil,* 92 F.3d at 230. *Chalifoux* is instructive here. In that case, the court held that the plaintiff's counsel had apparent authority to agree to the terms of a settlement, even in the absence of express authority. 2024 U.S. Dist. LEXIS 75112, at *12-15, 2024 WL 1699350, at *4-5. It relied on the fact that counsel

> represented plaintiff at all relevant times during the case, and the record show[ed] that all related correspondence flowed through him. Notably, [counsel's] representation included representing plaintiff at mediation in this case . . . which plaintiff was present for. Plaintiff had allowed his counsel to represent him not only throughout the litigation, but also at the actual discussions regarding a possible settlement agreement.

*Id.*, 2024 U.S. Dist. LEXIS 75112, at *14, 2024 WL 1699350, at *5 (footnote omitted). The Court also emphasized that the "plaintiff ha[d] never indicated to defendants' counsel that there was any reason to doubt that his own lawyer, in their settlement discussions, could not speak on his behalf with regard to a settlement offer acceptance." *Id.* Ultimately, the court concluded that

> [e]ven when an agent agrees to a settlement agreement to which his client has expressly not consented, the client can still be bound by the agreement if the agent has accepted the offer while acting under apparent authority granted by his client, and if the other negotiating party has no reason to know that the agent has exceeded his actual authority in doing so.

*Id.*, 2024 U.S. Dist. LEXIS 75112, at *15, 2024 WL 1699350, at *5.

Similarly, here, the Debtors have not met the heavy burden of showing that Ms. Patrick lacked apparent authority to agree to the July 30th Final Payoff Date. For more than a year and a half, Ms. Patrick represented the Debtors in this case. Prior to her withdrawal, she appeared at every hearing on their behalf. Not only did she represent the Debtors before the Court, she also represented them during the settlement negotiations on February 9th, communicating directly with opposing counsel while the Debtors were present. The extensive communications between Ms. Patrick and the Debtors further reinforce the Court's conclusion. The telephone log admitted into evidence reflects hours of phone calls between Ms. Patrick and the Debtors leading up to the February 9th evidentiary hearing. *See* Ex. D [dkt. 215-2]. The Debtors' email correspondence with Ms. Patrick is also indicative of a robust and ongoing attorney-client relationship. *See* Ex. B [dkts. 219, 220, 221, 222, 223]; Ex. C [dkts. 224, 225, 226, 227]. In short, there is nothing in the record to indicate that there was any reason for Mr. Harkins to doubt that Ms. Patrick could speak on the Debtors' behalf regarding the acceptance of a settlement offer, including the July 30th Final Payoff Date. The Debtors have therefore failed to overcome the strong presumption of Ms. Patrick's apparent authority.

Finally, there is the issue of timeliness. The Agreed Order was entered by the Court on March 2, 2026. The Williamsons do not dispute that they received and reviewed it by March 10, 2026. *See* Ex. B [dkt. 217-1], at 44. The Debtors again acknowledged the "July 30 payoff deadline" in an email to Ms. Patrick on May 29, 2026. *See* Ex. B [dkt. 220-1], at 99. Yet the issue of counsel's purported lack of authority was not raised with the Court until almost five months later—first, at a hearing held on July 22, 2026, and then again in the Motions filed on August 14, 2026. If the Debtors had concerns regarding Ms. Patrick's authority, they should not have waited nearly five months to raise the issue with the Court at a point when the deadlines set forth in the Agreed Order were imminently approaching. *See W. Auto Supply Co. v. Dillard*, 172 S.E.2d 388, 393 (W.Va. 1970) (holding that "the question of an attorney's authority to represent clients must be raised immediately by a motion or petition accompanied by affidavits"); *Miranosky*, 161 S.E.2d at 667 (requiring the issue of counsel's alleged lack of authority to be raised "immediately" in order to rebut the "strong presumption" of authority); *Moreland v. Suttmiller*, 397 S.E.2d 910, 915 (W.Va. 1990) (rejecting argument that counsel lacked authority to enter into a settlement agreement where "the record [did] not reflect any attempt by appellants to repudiate the fiduciary relationship established with their counsel, although they would have had sufficient opportunity to have done so"). For all of these reasons, the Court finds that the Debtors have not rebutted the strong presumption that Ms. Patrick had apparent authority to agree to the July 30th Final Payoff Date.

**V. Conclusion.**

For the reasons set forth herein, the Court finds that the Debtors have failed to meet their burden of showing that Ms. Patrick lacked actual or apparent authority to agree to the July

30th Final Payoff Date. Accordingly, the Debtors have not satisfied the stringent requirements of Rule 60(b). It is hereby

**ORDERED** that the Motions are **DENIED**.

**It is so ORDERED.**